Case number 4-14-07-45. People of the State of Illinois v. Gregory Miner. And for the appellant we have Mr. Yeasty. Is that correct, sir? Okay, and for the athlete we have Ms. Brooks. You may proceed, counsel. Thank you, Your Honor. Can I inquire of the court as to how you manage time? It's my first time arguing in this district. You will have the yellow light when you have, what is it? Two minutes left. Two minutes left, and then once the red light comes on, you're done. Yes, thank you, Your Honor. So I'd like to hold a couple of minutes for rebuttal. You get it automatically. You get five minutes. I proceed. And by the way, since there was an issue earlier today, on behalf of the court, we want to thank both of you for following our direction and being here a half hour early because we're able to again get started and it's a courtesy that we appreciate. So thank you, sir. You're welcome, Your Honor. Good afternoon, Your Honors, and may it please the court. The state, I believe, framed things correctly in the closing argument of this case when it said to the jurors that whichever version of events that they choose to believe would be the one that would direct their verdict. My client, Gregory Minor Sr., in the self-defense case, in that context was unable to present some of the most compelling evidence of the purported victim's violent testimonies, in particular, how the victim, Gregory Minor Jr., my client's adult son, had only a few days before this incident attacked his girlfriend, pinned her to a bed, taken his cell phone from her hand, and a few weeks before that, that Gregory Minor Jr., in fact, had actually called the police on himself to have himself taken into custody because he was afraid of what his violent tendencies might do to others. The day after he called the police on himself, my client's adult son, Jr., actually checked himself into the hospital because of his violent tendencies. Your Honor, the dispute at the Minor household erupted partly as a response to all these events. Gregory Minor Jr., the victim, was there because Casey had kicked him out of their shared home and because Casey had gotten an actual order of protection against Jr. Yet, the jury heard almost none of these facts. They didn't hear hardly any of Jr.'s violent tendencies toward Casey. They heard just bare facts that he was there because Casey kicked him out and a glancing reference to an order of protection. Under People v. Lynch, Casey's testimony should have come in evidence to show why Jr. was violent. Now, below, in front of the trial court, was that the representation of defense counsel that wanted to offer it for basically showing the propensity to violence for violence or was it instead just showing his state of mind? Counsel argued both, Your Honors. And I'd submit, because we're conceding that the error is forfeited because of the omission from, the complete omission of a motion for a new trial in this case, that counsel's specific arguments wouldn't matter. If we just had Casey's testimony with no evidentiary argument at all, then we'd be in the same position with regard to a plain error. However, Your Honor, it's notable the extreme depth of the offer of proof made in this case. This goes far beyond what the Illinois Supreme Court saw in Lynch, where this question is, do we have some references to bare battery convictions? What are they? Here, we have Casey's very detailed descriptions of the events. What about counsel's representation to the trial court that there is no suggestion of physical violence in Casey's accounts of the events? Well, Casey testified, what Casey testified to can only honestly be described as physical violence. Well, but doesn't this change your response to Justice Holder White's question about what defense counsel's position was in arguing this to the trial judge? Your Honor, I would submit that even if, you know, we accepted that counsel was trying to make some other kind of argument, that would simply be an argument for why this evidentiary error would be forfeited. And then we'd end up in the same place in terms of this Court's kind of review because we'd be reviewing it for plain error. I'd note also that under the Lynch framework, a physical violence amounting to a crime isn't necessary for evidence to be admitted under Lynch. Instead, it's simply a question of the victim's prior violent conduct. Well, it has to be sufficiently violent and aggressive to warrant admission under Lynch, right? That is correct, Your Honor. So is that the analysis we need to undertake? Was there evidence that it was sufficiently violent and aggressive to warrant admission? I would certainly submit there is, Your Honor. When you look at the last event where Junior attacked Casey, she questions him about text messages. His response is to grab her, pin her down to a bed, which counsel somehow describes as not physical, but she's saying she can't move when he's looming over her in that bed. Given the evidence that was presented by the defense of Gregory's past violence against the defendant, why isn't this incident with Gregory's girlfriend simply cumulative? I think it would be more compelling and would even reinforce some of the evidence that came in that did come in under Lynch. That's always true of cumulative evidence, isn't it? Well, cumulative evidence would add nothing. Here's what this would... No, no. Cumulative evidence would be more of the same. That's the definition of cumulative evidence. Well, here's how this goes beyond what would be before the jury. First, you have proximity and time. These instances, the closest one to the time of the dispute at the minor household was two days before. There's an instance three days before. There's an instance a few weeks before. So when my client and Lucas testified the incident the year before where Junior threw Senior to the ground and caused the re-injury to his replaced knee, that's a lot more remote in time. Well, that's a lot more consistent with the Lynch stuff about violence and how he injured the defendant. That was... It may not be as immediate in time, but it was certainly a demonstration of... It was of the defendant that you wanted the jury to be able to hear, or Gregory, that you wanted the jury to be able to hear. And I'd submit that because we have some Lynch evidence, that would make the case more closely balanced. But there's also specific parallels to what Casey describes in the later incident at the minor household. Casey describes Junior violently pinning him down on the bed. Well, let me ask you about that because in the offer of proof, Casey stated that he was screaming at her and was close enough to her that she couldn't move from the bed. And then when she was specifically asked whether or not there was physical contact, she indicated, no, he just got close to my face. So when you say pinning, I take it you don't mean physically holding her down or physically restraining her. I would actually submit that the reasonable interpretation of Casey's testimony would lead toward pinning. She says he wasn't physical with her. I believe that that would be Casey saying that he didn't hit me, at least on that occasion. I'd also note that there's grabbing the cell phone from her hand. Physical contact, though, I mean, that suggests, did the person make contact, you know, their hands or some part of their body with your body? And her response was, no, he just got in my face, got close to my face. I understand. I understand, Your Honor. There's also her testimony about him snatching the cell phone out of the hand. That's the kind of testimony that, say, in a robbery case, we would look to as an implementation of force. We also have Casey's testimony about the kind of threats that Junior made toward her a few days before, where he said that he was going to lose it and that Casey wasn't going to like what she saw. Now, given the characterization of Casey's testimony, as well as the question of whether this is cumulative and therefore not necessarily admissible if it's cumulative, isn't that all addressed at the sound discretion of the trial court as the court addressing evidentiary matters of this kind? And in looking it over, in order to agree with you, don't we have to conclude that the trial court abused its discretion, which, another way of putting it, no reasonable person could have ruled as the trial court did in this case? Frankly, Your Honor, I'd submit that this isn't a case where the question of the standard review matters that much, especially when we go and look at the trial courts. I didn't understand. It's a case where what? I would submit that either under an abuse of discretion standard or a de novo standard, given the kind of reasoning. Well, how could it be de novo? Well, Your Honor, as argued in Mr. Minor's brief, because this amounted to a deprivation of his right to present a complete defense, that raises a constitutional question. Well, wouldn't that always be an argument that could be made with regard to the trial court sustaining the state's objection to evidence the defendant is offering? Gee, this is a constitutional violation. You know, it's a right of due process because you're keeping out evidence. This is an evidentiary ruling. I'm just making counsel. Yes, Your Honor, and I'd refer the court to the Foskey case, the other cases that are cited that discuss how things like a failure to be able to impeach a witness in the cited case in the brief, that ends up being Davis v. Alaska violations, thus reviewed de novo by the Illinois Supreme Court. But even under an abuse of discretion standard, then we look for the court's actual reasoning, and it's highly unpersuasive in this case. So no reasonable person could view grabbing the phone from Casey's hand as not being an act of violence? I would submit that, I would agree with that, Your Honor, that it would be arbitrary or fanciful to say that this wasn't a demonstration of Junior's propensity for violence, especially in light of the court's actual reasoning. The court reasoned that, you know, based on the state's argument, that Casey somehow instigated the being trapped in the bed and having the phone being taken from her hand because she questioned Junior, her boyfriend, over these text messages. That's not, I don't believe that simply questioning somebody is sufficient to instigate the kind of threatening behavior that Junior then showed toward Casey. The court below also thought for some reason that it was too remote in time when it was only two days before. I believe the brief cite Bedoya from the First District that discusses how two years before in time was not too remote. This is some of the most proximate lynch evidence that I think has been presented in Illinois court, Your Honor. And finally, Your Honors, I'd like to note how closely balanced this case is. As I mentioned when opening my argument, the state framed the issue for the jury as a question of who do they choose to believe. And we have clear, you know, perfectly plausible conflicting testimony between the complainant and the defendant in this case. Where Junior says that Senior swung first, Senior says that Junior swung first. They pursue themselves through the building. When they get to the threshold of the apartment, Senior testifies that that's when Junior takes up a boxing stance and punches him again in the head. And then they're interrupted by Jonathan Williams when they're wrestling over the knife. Now, under the framework of cases like People v. Naylor and the Getter case from the First District, this is the kind of confused conflicting testimony. The defense testimony is perfectly plausible. These are things that can happen that renders the case closely balanced. And given the nature of the evidentiary error in this case, that it will go straight toward the question of what exactly is Junior's propensity for violence. I'd submit that the record is quite clear that this could easily have tipped the jury into an acquittal. I'd also note that the jury asked several questions of the court that seemed to indicate that they were considering a split verdict. While I'd agree under Wilmington that that's not determinative, whether a case is closely balanced, it's highly suggestive here, Your Honors. And finally, I'd like to note that there's a currently pending motion to cite additional authority on the additional issue of the clerk-imposed fines. This is one of these things that this Court has been working through after Castleberry. The current status of it is when the clerk imposes fines, the clerk is acting extra-jurisdictional, so it's still remediable after Castleberry. And because any additional remand for fines to be newly imposed would be an increase in the sentence, this Court's practice has been not to remand for even mandatory fines to be newly imposed, but to require the State to file a mandamus if they want the fines. Thank you, Your Honors. Thank you, Counsel. Ms. Brooks? Thank you, Your Honors. May I please support and counsel? My name is Allison Paige Brooks, and I appear on behalf of the people. With respect to fines and fees, we have no objection to the motion to cite additional authority. And in light of additional, the more recent cases, we are not requesting anymore a remand for re-imposition of fines. With respect to the main argument, which is the lynch evidence issue, because it is forfeited, the defendant has a burden of showing clear and obvious error. And because the standard review is abuse of discretion, and that applies under the Burgess case, even though the defendant is claiming a constitutional right to present a defense, the inovo review would only apply if the defendant was challenging a rule of evidence itself as violating his constitutional right to present evidence. Instead, he's challenging a ruling by the judge under rules of evidence, not the rule of evidence itself. So therefore, this is reviewed for abuse of discretion. And to meet the plain error standard has to be a clear or obvious abuse of discretion, which is even much higher over the most substantially deferential standard review, which is very difficult to do. He also has a burden of showing the evidence in the case was closely balanced. And he primarily seems to rely on an argument made by the prosecutor to the jury  But this court has a duty to review the judgment itself and review the evidence under plain error review to see whether the case was in fact closely balanced. And so that's why the state relies on the evidence, not simply making the prosecutor's argument conclusive as to whether the case was close or not. This was not really completely a case of contested credibility because of the fact that in the hallway confrontation, there was not this overriding conflict of the various stories. The conflict mainly pertained to the issue of how the initial earlier confrontation in the defendant's bedroom began. And that is distinguishable from the second and what is the primary focus of the evidence, which is the question of the defendant's guilt depends on what happened in the hallway, not what happened in the bedroom. So state questions of relevance of evidence, if it's pertaining to the question of who was the aggressor in a different confrontation, that is the one in the defendant's bedroom. And of course, after the defendant chases the victim out of the apartment with a knife, then goes back in to check on his wife and then later comes out the hallway. So there's a distinct break in time and events between the two confrontations. So the relevance then becomes is there that dispute about who was the aggressor for the actual confrontation in the hallway is what the lynch evidence would go to. And also state questions what the defendant knew about the incident between Junior and Casey that he tried to admit was in the offer of proof. Some of the stuff he did know that they had been, quote, fighting, which did not necessarily mean a physical fight, just maybe mean arguing, and that she got an order of protection, which does not necessarily depend on a physical violence. So those are things the defendant knew as to why Junior was at his apartment. But he did not know specific facts necessarily. That's not established. So therefore, the question as to the impact of lynch evidence on the reasonableness of his actions is not quite so clear because he doesn't necessarily know all the facts that he's trying to admit through Casey's testimony, and he was permitted to testify about the facts about that incident that he did know. Not what was refused was Casey's testimony. So those were not facts necessarily that were established that the defendant knew about. So it really primarily got to then the question of who the aggressor was, and that, again, gets to the question of which confrontation was in question. And the primary conflict in evidence was the bedroom confrontation, not the later hallway confrontation that ended up with the cutting of the knife wounds against the victim. Also, the question that becomes the trial court's discretion in terms of this being cumulative lynch evidence, about the lynch evidence being not violent enough to constitute lynch evidence, and these are arguments the defendant also has to overcome in order to prevail. Primarily, in terms of the hallway confrontation the state wants to focus on, the defendant relies on page 292 of the transcript. And 292 of the transcript is his testimony at trial dealing with the hallway confrontation. And it starts there by saying that he walked down there, said, you need to leave, period. And then, of course, Junior says, shake his head, says he wasn't going anywhere. And this is a common hallway. This is not inside the defendant's apartment. He's asked then what happened, quote, he got close to me and hit me in the head. I pushed him against the wall. But then he says, first, before that happens, so now we have to unpack this, to find out what was the exact sequence. The first physical contact, according to the defendant's testimony, he, quote, he grabbed my hand and he was trying to hold onto my hand and wrist. He was trying to close that knife on my fingers. So we have a defendant who left his apartment, went and walked down the hallway with a knife, approaching Junior, who's standing there and refusing to leave. The defendant's orders for him to leave. So this is aggressive conduct by the defendant. He is trying to get the victim to do something, leave. He has a knife. The knife is out because the first thing that happens is the victim tries to grab that knife, which is something that a person can do to protect themselves against someone who's accosting them with a knife, approaching them with a knife, accosting them and ordering them to do something that they don't have to do. So to rely on that is saying that this means that getting close to him and hitting him in the head, which he says it was hitting him again in the ear, of course, that's after it says it didn't work for him. So essentially, he could not get the knife away from defendant and so then hits him in the ear, gets close to him and hit him in the ear. That's only after unsuccessfully trying to get the knife away from him. So what he's relying on is getting close to him and hitting him is not the beginning of the second confrontation. This is only after the defendant approaches with the knife and the victim unsuccessfully tries to get the knife away. This sequence of events was disputed by the defendant, wasn't it? This is his claims. This is his testimony. There's some differences, but they're not really material. There's a testimony of the victim, Junior. There's also the wife testified to some things, but she was not actually out in the hallway. And there's the neighbor that approached and heard some stuff and was sort of seen some things. So there's some different perspectives, but none of that is really material because approaching someone with a knife out and ordering them to do something is aggressive behavior. It takes away your right to self-defense. And that is even on top of what happened inside the apartment itself shortly before. The state cited the Thompson and Huddleston cases. Thompson was a case where there was a fight inside a place. At that time, the defendant obtained a butcher knife, a brief struggle ensued. The defendant, in that case, Thompson, gained sole possession of the knife, started to move towards the deceased. The latter retreated through the kitchen into a bedroom and then emerged with a knife wound thereafter. And they said at that point, because the deceased began to retreat, the defendant became the aggressor after gaining possession of the knife. And Huddleston is very similar. The decedent was the initial aggressor. That much was not disputed in that case. The defendant shot the decedent in the leg. And then it says here, the decedent tried to leave. The defendant followed the decedent to the door. He wanted to hit him in the head with a gun. The decedent turned around and then got shot. It says, even if we accept the defendant's version of the offense, and this is like this case, even if we accept what the defendant testified to, he was not protected by the law of self-defense. That's the Huddleston case. The decedent abandoned the quarrel. The decedent left the apartment. He was chased out at knife point, and he stands down the hallway. At that point, the defendant became the aggressor by following the decedent to the door. Here we have him following him out, not only to the door, but past the door and out later into the hallway with the knife. And so at that point, the defendant could not invoke the right of self-defense to justify such actions. This is not a close case. This is not a case where there was that conflict in evidence. If the only confrontation had been in the bedroom, sure, this would be a close case. The lynch evidence would maybe matter a lot more. But the injuries happened in the hallway where there was a second different confrontation, and that's why it has to be analyzed independently. I think the defendants made some comment about the remoteness and time being a factor. I think that pertained to what was Junior's state of mind. And the second claimed relevance in this evidence other than Lynch was Junior's state of mind, and the judge thought it was too remote. So in other words, is he still agitated, like, two days later after leaving Casey's apartment and moving in? The judge thought not that that was somehow not... The state even questions what's relevant of Junior's state of mind, really. I mean, if the argument is self-defense, the state of mind that matters is what the defendant is thinking, not what Junior is thinking. So that's not an independently relevant reason to admit that evidence and to offer proof. So for those reasons, the state requests this Court to affirm the conviction, and I would entertain any other questions. Thank you, counsel. Any rebuttal, Mr. Easting? Your Honor, my point is testimony that when we entered into that hallway, Junior was there in a boxing stance, and then shortly after that was the swing. Junior's point, the first blow in the hallway... What about Ms. Burke's point that your client enters in the hallway carrying the knife? He does enter in the hallway carrying the knife, Your Honor. He's a 54-year-old insulin... Isn't that a problem when he's claiming I acted in self-defense? I would note the remarkable asymmetry of this fight, Your Honor. This isn't, you know, a fight between equals. My client's a 54-year-old insulin-dependent diabetic who needs a second knee replacement and has one eye. Well, all the more reason don't approach someone with a knife in a hallway. He's managed to get him out, and so is it reasonable to conclude that he was wanting to continue the confrontation by going out into the hallway seeking his son while holding a knife? It's reasonable to conclude that he still wanted his son out, and this is something that I think Casey's testimony would have informed for the jury. I would note that after that dispute with Junior, between Casey and Junior, when the police arrive, Junior doesn't immediately leave. Instead, he does something similar to what he's going to do at the minor household a few days later. Keeps trying to come back until the... You know, and then Casey had to call the police on him again. This, you know, that kind of evidence would show Junior's certain propensity toward reinstigating these disputes and not knowing when the fight is over. None of that has to do with Lynch, though, does it? It would go directly toward his propensity for violence, Your Honor. It's even more specific than the kind of general battery conviction that we have in Lynch. It would directly inform the jury's evaluation of whether there was reinstigation of this fight. And I note that the State's framework at trial and the record supports a different interpretation of facts, that this isn't really two disputes. That this is a single ongoing dispute that begins with the wrestling in the bedroom, moves through the apartment, Junior is briefly outside that apartment door, the door is closed, it's probably a matter of seconds, and then Senior goes into that hallway. And they rustle, and the record's unclear as to exactly what side of the apartment's threshold they are when they rustle over that knife in the hallway, Your Honors. Your Honors, I ask this Court to conclude my client's case as closely balanced and to give my client a new trial. Thank you. Thank you, Counsel. We'll take the matter under advisement and be in recess. Thank you.